# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| VICKI L. ASHE,<br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)    CAUSE NO.: 2:14-CV-00363-JEM<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Vicki L. Ashe on October 7, 2014, and a Plaintiff's Opening Brief [DE 18], filed by Plaintiff on April 8, 2015. Plaintiff requests that the decision of the Administrative Law Judge be reversed or remanded for further proceedings. On July 15, 2015, the Commissioner filed a response, and Plaintiff filed a reply on July 28, 2015. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On July 23, 2011, Plaintiff filed an application for disability and disability insurance benefits alleging that she became disabled on December 31, 2003. Plaintiff's application was denied initially and upon reconsideration. On February 19, 2003, Administrative Law Judge ("ALJ") John P. Giannikas held a hearing at which Plaintiff, with counsel, one witness, a vocational expert, and two medical experts testified. On March 20, 2013, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2010.

2. The claimant has not engaged in substantial gainful activity since December 31, 2003, the alleged onset date. (20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*).

3. The claimant has the following severe impairments: Obesity, COPD, sleep apnea, chronic back pain in lumbar area/mild degenerative disc disease, cervical degenerative disc disease, scoliosis, left knee osteoarthritis, obsessive-compulsive disorder (OCD), and an adjustment disorder with anxiety and depression. (20 C.F.R. §§ 404.1520(c), 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1. (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), 416.967(b) except she can occasionally engage in all postural functions, but can never climb ladders, ropes or scaffolds, and never crawl. She must avoid concentrated exposure to wetness, fumes, odors, gases, and other respiratory irritants. She can understand, remember, and carry out detailed work instructions on an occasional basis, and simple work instructions continuously. She is capable of occasional superficial interactions with coworkers and supervisors, minimal changes in the routine work setting, and no public contact.

6. The claimant is unable to perform any past relevant work as a cashier and optician. (20 CFR §§ 404.1565 and 416.965).

7. The claimant was born on September 11, 1971, and was 32 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 C.F.R. §§ 404.1563, 416.963).

8. The claimant has at least a high school education and is able to communicate in English. (20 CFR §§ 404.1564, 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the clamant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

  national economy that the claimant can perform. (20 CFR §§ 404.1569, 404.1569(a), 416.969, 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2003, through the date of this decision (20 CFR §§ 404.1520(g), 416.920(g)).

On July 1, 2014, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

**FACTS**

Plaintiff has been diagnosed with degenerative disc disease, arthritis, depression, anxiety, asthma, sleep apnea, scoliosis, bronchitis, and chronic obstructive pulmonary disease. Dr. Hunter was Plaintiff's treating psychiatrist from August, 2011, through January 21, 2013. She diagnosed Plaintiff with obsessive-compulsive disorder (OCD) and adjustment disorder with mixed anxiety and depression and completed two medical source statements that assessed Plaintiff's mental capacity and the accompanying limitations on her ability to work. On these medical sources statements, Dr. Hunter marked that plaintiff had poor or no ability to do the following: (1) relate predictably in social situations, (2) behave in an emotionally stable manner, (3) deal with work stress, (4) understand and remember detailed job instructions, (5) deal with the public, and (6) understand or remember complex job instructions.

In addition to other medical care providers, Plaintiff received medical care from Nurse Practitioner Drescher, R.N., M.S.N, who completed a medical source statement. She opined that Plaintiff could not perform sedentary work; her mobility was severely restricted; she was unable to lift five pounds; she had severe asthma; and Plaintiff could never climb, balance, stoop, crouch,

kneel, crawl, bend, or twist. Plaintiff also received pain management treatment from Dr. Cha. from April 12, 2012, to December 6, 2012.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734–35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White*

v. *Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant

5

numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996)); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four,

6

whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

**A.    Credibility Assessment**

Plaintiff argues that the ALJ improperly evaluated her credibility. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv)The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements

7

regarding symptoms or the effect of symptoms on her ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

The ALJ gave several reasons for discounting Plaintiff's credibility, including limited physical exam findings, conservative treatment, and what he considered to be inconsistencies in her testimony. Plaintiff argues that the ALJ ignored Plaintiff's repeated reports of pain and the physical exam findings that supported them, that he erred in finding her physical and mental health treatment to be conservative.

The ALJ considered the treatment that Plaintiff received for her physical impairments to be "conservative, involving only injections and pain medication." However, Dr. Cha, Plaintiff's physician who handled her chronic pain management, explicitly noted that "[Plaintiff]'s condition has failed to respond to the usual conservative measures" and that he moved on to other, less-conservative options including pain blocks and morphine. AR 455. Furthermore, despite the ALJ's statement that the physical exam findings were "quite minimal," the record in fact demonstrates objective signs of pain, including guarded ambulation, antalgic gait, decreased range of motion, decreased grip strength, muscle spasms and joint puffiness – not to mention that, even if this was not in the record, the complaints may not be disregarded solely on that basis. SSR 96-7p at *6; *see also Adair v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015) ("[The ALJ's] principal error, which alone would compel reversal, was the recurrent error made by the Social Security Administration's administrative law judges, and noted in many of our cases, of discounting pain testimony that can't be attributed to 'objective' injuries or illnesses – the kind of injuries and illnesses revealed by x-rays.

. . . Not realizing that pain can be real and intense yet its cause not be discernible by medical tests or examinations, the administrative law judge repeatedly intoned the distinction between 'subjective' and 'objective' evidence of pain, the former being testimony of the applicant. What makes the error in this case well-nigh incomprehensible is that there *was* 'objective' evidence of pain.") (citations omitted).

The ALJ also found that Plaintiff's report of mental health difficulties were less than credible because she "attended minimal therapy sessions over the course of a year." However, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide" and "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." SSR 96-7p, at *7; *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p). In this case, the record indicates that Plaintiff attended bi-monthly psychiatric treatment from 2011 until 2013. Apparently the ALJ made some sort of determination about how many therapy sessions would be considered adequate, a determination that looks suspiciously like he was impermissibly "playing doctor," *see, e.g., Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009), and then found that because Plaintiff failed to seek that

level of treatment, her allegations of depression, anxiety, and OCD are not credible, without asking Plaintiff why she did not attend more therapy sessions.

Because of these errors, this matter is being remanded for a new credibility determination. On remand, the ALJ is directed to fully consider the testimony of Plaintiff and the medical evidence in the record. The ALJ is reminded of the requirement that he seek additional evidence, including the testimony of Plaintiff, as needed.

**B.      Residual Functional Capacity**

Plaintiff argues that the ALJ failed to give sufficient weight to Plaintiff's treating medical providers and failed to adequately consider Plaintiff's obesity when discussing the combined effects of the claimant's impairments. The Commissioner contends that substantial evidence supports the ALJ's RFC finding.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material

> inconsistencies or ambiguities in the evidence in the case record were
> considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 871 (7th Cir. 2000); *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

    1.    <u>Weight to Medical Providers</u>

Plaintiff argues that the ALJ did not conduct a proper evaluation of her RFC, and that ALJ did not identify which evidence he found reliable or otherwise provide enough information to determine how he arrived at Plaintiff's RFC. The Commissioner argues that the RFC was based on a review of the entire record and is supported by substantial evidence.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188, at *3 (July 2, 1996). To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Schmidt v. Barnhart*, 395 F.3d at 744. In particular, an ALJ may not simply ignore an opinion that addresses a plaintiff's ability to work, but must "evaluate all the

11

evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p, 1996 WL 374183, at *3, *5 (July 2, 1996); *see also Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96–5p) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it.").

If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). "[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

Plaintiff's treating psychiatrist completed medical source statements indicating that Plaintiff was severely limited in her ability to perform requirements of a job. One reason the ALJ gives for discounting these statements is that the form "provide[s] no basis for these extreme opinions." Although brief answers in the form of questionnaires are frequently criticized because they are

12

conclusory in nature and lack supporting facts, there is less reason for skepticism when the opinion provided is based on a doctor's own observation and treatment of the claimant and the ALJ has access to his or her medical records to check the soundness of the opinion. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records" from the doctor providing the opinion); 20 C.F.R. § 416.916(c)(2) (explaining that treating physicians' opinions are generally entitled to more deference because they "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone"). The ALJ said that the checkbox forms were entitled to little weight because Dr. Hunter treated the patient fewer than a "handful of occasions" and had not seen Plaintiff for several months prior to completing the second medical source statement. Despite this assertion, the record reveals that Plaintiff attended at least five psychiatric consultations with Dr. Hunter prior to the April 23, 2012, medical source statement, and attended three additional psychiatric appointments before the January 21, 2013, medical source statement. Eight treatment sessions are certainly enough to create sufficient medical records on which a treating psychiatrist can make a determination of a patient's limitations; however, it appears that the ALJ failed to consider how the medical records support the diagnoses and clinical findings on the medical source statements, despite the fact that Dr. Hunter is Plaintiff's treating psychiatrist.

The ALJ's other stated reason for discounting the medical source statements was that they were based on Plaintiff's self-reporting, apparently because Plaintiff reported symptoms of OCD to her therapist and received a diagnosis of OCD during her next visit. However, the ALJ did not identify any medical opinions to support his apparent conclusion that Plaintiff did not actually have OCD. The Seventh Circuit Court of Appeals has repeatedly warned ALJ's not to "play doctor" by

13

substituting their opinion for that of a treating and consulting mental health professional. *See Myles*, 582 F.3d at 677–78 (stating that the ALJ impermissibly "play[ed] doctor" when he substituted his lay opinion for a physician's opinion regarding a medical condition); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (warning ALJs to avoid the temptation of playing doctor and advising ALJs to rely on expert opinions); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (explaining that ALJs must avoid making their own medical findings). Instead, the ALJ appears to have relied on his personal opinion to reach conclusions about Plaintiff's mental health condition.

Furthermore, the ALJ failed to adequately explain his decision to discount Dr. Hunter as a treating source. He failed to identify her expertise as a psychiatrist who specializes in diagnosing and treating mental disorders, despite the requirement that he grant more weight to specialists when the medial issue is related to their area of expertise, 20 C.F.R. § 404.1527(a)(2)(c)(2)(ii)(5), and misstated the length and frequency of treatment. Instead, he discounted Dr. Hunter's medical opinions as "extreme" because they conflicted with the state consultative examiners' conclusions without explaining how they were inconsistent. In fact, the ALJ did not describe the contents of any of the records provided by Dr. Hunter other than the medical source statements, leaving the Court unable to trace the ALJ's reasoning from his failure to address Dr. Hunter's records to her conclusion that they did not support her medical source statements. *See Clifford*, 227 F.3d at 871 (7th Cir. 2000) (finding error when an ALJ did not consider all relevant evidence before discrediting a physician's opinion); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (stating that an ALJ cannot "select and discuss only that evidence that favors his ultimate conclusion" because an ALJ must consider all relevant evidence.). The ALJ erred in his analysis of the opinions of treating psychiatrist Dr. Hunter.

Likewise, the ALJ did not fully explain his decision to discredit the medical source statement of Nurse Practitioner Drescher. Although a nurse practitioner is not an "acceptable medical source" whose opinion would be entitled to controlling weight, 20 C.F.R. §§ 404.1527, 416.927, an ALJ must consider "all relevant evidence in an individual's case record," including opinions "from medical sources who are not 'acceptable medical sources,'" SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006), and must apply the same criteria to determine the weight given their opinions as is applied to the opinions of "acceptable medical sources." *See Phillips v. Astrue*, 413 Fed. Appx. 878, 884 (7th Cir. 2010) ("In deciding how much weight to give to opinions from these 'other medical sources,' an ALJ should apply the same criteria listed in § 404.1527(d)(2)"). In this case, the ALJ failed to include in his analysis important factors such as the consistency of Ms. Drescher's opinion with the record as a whole, her specialties, her familiarity with Plaintiff's medical record, and the recency of her report. *See* 20 C.F.R. § 404.1527(c); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The ALJ failed to adequately assess Ms. Drescher's medical opinions.

2.  <u>Combination of Impairments</u>

Plaintiff also argues that the ALJ failed to adequately explain his consideration of Plaintiff's limitations caused by her combination of impairments. "Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider

the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

In particular, Plaintiff argues that her obesity has a significant impact on her other impairments. Plaintiff has a BMI of 48.28. Any BMI of 40 or greater is considered "extreme" obesity. SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). Social Security Ruling 02-1p requires an ALJ to consider obesity as an impairment and the exacerbating effects of a claimant's obesity on her other conditions when arriving at the RFC assessment, even if the obesity is not itself a severe impairment. *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008); *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (finding that, even if obesity is not a severe impairment itself and "merely aggravates a disability caused by something else[,] it still must be considered for its incremental effect on the disability"). Ruling 02-1p provides that in evaluating obesity in assessing RFC, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1p, at *6. Further, Ruling 02-1p explains that an ALJ's RFC determination must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *Id.* (citing SSR 96-8p).

The ALJ acknowledged the requirement of considering Plaintiff's obesity in combination with other impairments, noted that her obesity is a severe limitation, and mentioned state medical expert Dr. Houser's opinion that her obesity aggravates her knee and back pain, although he did not address how it might affect her RFC assessment. More concerning is the ALJ's apparent failure to consider the combination of Plaintiff's mental health and her physical impairments, including side

effects from her medications, on her ability to do work. In particular, the ALJ gave great weight to Dr. Kravitz's testimony that Plaintiff has moderate limitations in concentration, persistence, and pace, but did not explain how those limitations were incorporated into the RFC. "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citing S.S.R. 96-8p; *Golembiewski*, 322 F.3d at 917); *see also Underwood v. Colvin*, No. 2:11-CV-354-JD-PRC, 2013 WL 2420874, at *2 (N.D. Ind. May 30, 2013) ("While it is true that the ALJ need not specifically include limitations on concentration, persistence and pace in the RFC finding, . . . the requirement that the ALJ "consider" such limitations has certainly been interpreted to mean that a real "evaluation" of the effect of those limitations on the claimant's ability to work must take place. The ALJ did not do that, here. After finding mild limitations on concentration, persistence and pace, the ALJ did not include those findings in the RFC; did not explain why or how those findings were incorporated into the RFC as otherwise written; and in fact did not give any indication that those findings were considered or evaluated at all in arriving at the RFC.") (citations omitted).

This matter is being remanded for a new RFC. On remand, the ALJ is directed to consider all the medical evidence in the record and adequately analyze the reports of Plaintiff's treating medical sources in accordance with the regulations. The ALJ is also directed to fully consider the combination of all of Plaintiff's impairments, and to draw a logical bridge from her impairments to their incorporation into the RFC.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 18] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 17th day of March.

                                      s/ John. E. Martin
                                      MAGISTRATE JUDGE JOHN E. MARTIN
                                      UNITED STATES DISTRICT COURT

cc:     All counsel of record